## School Taxes on Seated Lands.

O'HARA, Dep. Att'y-Gen., May 1, 1930.—Your requests for an opinion from the Department of Justice on the subject of the collection of school taxes and the application of the Act of May 9, 1929, P. L. 1684, to their collection have been referred to me.

This act refers to the collection, among other taxes, of school taxes assessed upon *seated lands*, and this opinion is confined to a consideration of the taxes assessed by school districts upon seated lands.

We have considered the specific questions submitted by you and will answer them in the light of the following considerations.

The true construction to be placed upon the Act of May 9, 1929, P. L. 1684, and its effect upon the remedies existing at the date of its enactment for the collection of school tax in the school districts of the Commonwealth, is not free from doubt.

Upon its face this act compels the receiver of taxes to return such taxes on or before the first Monday of May in the year following their levy and assessment, but it may be that, in view of the history of taxing legislation in this State, the courts will interpret the phrase "it shall be the duty . . . to return" as permissive rather than mandatory, and that they will hold that the Act of May 16, 1923, P. L. 207, affords an alternative remedy unimpaired by the Act of May 9, 1929, P. L. 1684.

Under another interpretation, the Act of May 9, 1929, P. L. 1684, would impose a penalty of 1 per centum per month beginning Jan. 1, 1930, upon taxes assessed and levied prior to its enactment, without a levy or warrant therefor, by the authority levying the tax within the territorial limits of a municipality or district; would reduce the time within which the collectors of county, borough and township taxes may collect their respective duplicates out of the personal property of the taxable or upon the premises from two years to periods less than one year; would reduce the time within which the collectors of school tax may collect their respective duplicates out of the personal property of the taxable or upon the premises from a period of approximately eleven months to a period of approximately six months; would in effect amend the Act of May 16, 1923, P. L. 207, by reducing the time within which a claim may be filed upon a tax lien from a period within the last day of the third calendar year after that in which the tax is first payable to varying periods of less than a year; would either amend the Act of May 18, 1911, § 562, P. L. 309 (School Code), by reducing the time within which the collector of school taxes in districts of the second, third and fourth class shall certify to the secretary of the school board all unpaid school taxes assessed and levied upon real property upon which there is no personal property out of which the same can be collected, or repeal this section of the School Code, and by so doing, perhaps, deprive school districts of the benefit of the Act of May 16, 1923, P. L. 207.

Such construction would interpret the provisions of section 1 of the Act of May 9, 1929, P. L. 1684, as mandatory and thus limit the use of the procedure set up under the Act of May 16, 1923, P. L. 207, and make it available only between the date the tax duplicate is delivered to the collector and the first Monday of May in the next year. It would materially reduce the time within which the taxable might, by the payment of his tax, escape the sale of his real estate, and it would also substantially limit the period within which the collectors of the various taxes may earn their commissions. Such interpretation would speed up the collection of taxes and may be the true interpretation, but as we view the questions submitted, the responsibility to construe this act rests with the courts, who will have the benefit of passing only upon litigated points and the briefs of counsel. The responsibility of the Department of Justice, in our opinion, under these circumstances, is to indicate to you such action as the several school districts and the collectors of their taxes may take and should take until the Act of May 9, 1929, P. L. 1684, has been interpreted by the appellate courts.

Under this view we refrain from expressing our views and suggest that the only safe course for the collector of school taxes to pursue is to return all taxes assessed and levied in 1929 on seated lands and unpaid to the county commissioners of the county in which the real estate lies, and for which no liens have been filed under the Act of May 16, 1923, P. L. 207, not later than the first Monday of May. If the collector of school taxes has not certified to the secretary of the school board all unpaid school taxes assessed and levied upon real property upon which there is no personal property out of which

the same can be collected, and does not return such taxes to the county commissioners on or before the first Monday of May, 1930, he may thereafter, if the construction last above noted be placed upon the Act of May 9, 1929, P. L. 1684, find himself under the necessity of finding personal property out of which he may make the taxes and penalties or be personally liable for the amount of the taxes and penalties. We suggest the advisability, for the same reason, of including in such return the penalty of 1 per centum per month, whether the tax was levied and assessed in 1929 prior to May 9th or after.

Briefly answering your questions not covered by above suggestion:

The Act of May 9, 1929, P. L. 1684, applies to seated lands in school districts of all classes; does not apply to taxes assessed prior to 1929, so far as to compel or permit return thereof or the imposition of the added penalty, but may apply to taxes assessed prior to 1929 and returned pursuant to the provisions of the Acts of May 21, 1913, P. L. 285, and of June 1, 1915, P. L. 660, so far as to provide a remedy for the enforcement of the return. See Bradford County v. Beardsley, 60 Pa. Superior Ct. 478. Claims filed pursuant to the Act of May 16, 1923, P. L. 207, must be enforced pursuant to the provisions of that act.

The penalty of 1 per centum per month authorized by the Act of May 9, 1929, P. L. 1684, is added to taxes on seated lands unpaid before Jan. 1st of the year following the levy and assessment of the tax, whether personal property be found upon the premises sufficient to pay the tax or not, and is collectible after Jan. 1st, whether the tax be paid before or after the return to the county commissioners.

You are also advised that, in our opinion, the collector of school taxes must exhaust every other means to collect from personal property before he returns the seated lands bound by the tax, but if he fails to make or to collect such taxes by distress and sale of goods and chattels, or by imprisonment of the delinquent, his failure shall not invalidate any return made or lien filed for the nonpayment of taxes or any tax sale had for the collection of such taxes on such land: Act of May 4, 1927, P. L. 712, amending the Act of April 15, 1834, § 21, P. L. 509.

You are further advised that if any tax is returned to the county commissioners for collection, the collector is not entitled to receive or collect any fees, commissions or penalties, and is relieved from responsibility for its collection: Act of May 7, 1929, P. L. 1576.

Replying to your specific questions:

"Can school districts require the county treasurer to furnish detailed statements of the tax collected?"

It is the duty of the county treasurer to account to the school district for all taxes assessed and levied by the school district, and all penalties thereon, as provided by law, which may be collected by him pursuant to the provisions of the Act of May 9, 1929, P. L. 1684. No detailed statement is required of him other than the report and return to the Court of Common Pleas, as required by section 9 of the act, where a sale is had. Where no sale is had, it is the duty of the county treasurer to report and transmit the tax and penalty so collected in due course of business.

"Does the additional penalty that is assessed on the first Monday of January apply to taxes which are subsequently paid before the first Monday in May or before the return is made to the county commissioners?"

Yes.

"What is seated land as relating to unseated land? Is there such a thing as unseated land in third class cities?"

"Seated land," as used in the tax laws, is land that is occupied, cultivated, improved, reclaimed, farmed or used as a place of residence; land on which are such permanent improvements as indicate a personal responsibility for its taxes.

"Unseated lands" are those on which there are no such improvements as indicate a personal responsibility for its taxes; lands which are neither in the possession of, nor cultivated by, any person.

From C. P. Addams, Harrisburg, Pa.