## D. J. JONES v. BOROUGH OF BANGOR.

**APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.**

Argued March 11, 1891—Decided January 4, 1892.

[To be reported.]

1. A landowner, who lays out a street through his property and dedicates it to public use, is not precluded thereby from recovering damages for a change in its grade made by the municipal authorities; at least, where the change is not ordained until several years after the dedication, and the grading is an act separate and distinct from the opening of the street.

2. The right of action, under § 8, article XVI. of the constitution, and the act of May 24, 1878, P. L. 129, for damages caused by changing the grade of a street, accrues when the work is done on the ground; it is the physical, not the paper change, which confers it. Wherefore, the damages accruing from a change of grade belong to him who is the owner of the abutting property at the time of the actual grading.

3. When a person becomes the owner of property, after the municipality has ordained a change in the grade of a street upon which it fronts, the fact that his purchase is made with the knowledge and understanding, on the part of both vendor and vendee, that the street will be made eventually to conform to the new grade, does not operate to relieve the municipality from liability for damages.

4. The consent which will relieve a municipality from its constitutional obligation to make just compensation to the owner for an injury to his property, must be something more than non-resistance. It should be given to the municipality by the party interested; and in express terms, or by necessary implication, it should embrace a release of the right to damages: Per Mr. Justice McCollum.

5. A lotowner, who joins in a request to the authorities of a borough to grade a street, is not thereby estopped from claiming compensation

for an injury to his property done by the grading. The distinction between such an act, and the acts which were held to create an estoppel in Bidwell v. Pittsburgh, 85 Pa. 412; Dewhurst v. Allegheny City, 95 Pa. 437; and McKnight v. Pittsburgh, 91 Pa. 273, is obvious.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 342 January Term 1891, Sup. Ct.; court below, No. 29 December Term 1887, C. P.

On November 7, 1887, David J. Jones filed a petition for the appointment of viewers to assess damages for a change in the grade of Pennsylvania Avenue, in the borough of Bangor. Thereupon, the court appointed viewers, who afterward reported awarding the plaintiff $110 damages. Both parties having appealed from the award, the case was put at issue upon a statement of claim and a traverse of certain of the averments therein contained, sec. reg.

At the trial on January 20, 1891, the following facts were shown:

Prior to 1874, John Lobb became the owner of eighteen acres of land lying on the south side of a public road, and the plaintiff became the owner of thirteen acres lying on the north side of the same road. Early in 1874, Lobb laid out his land in building lots, according to a plot which he placed on record. One of the streets dedicated by that plot was Pennsylvania Avenue. It was so laid out as to leave an irregularly shaped piece of Lobb's land lying between it and the public road above mentioned.

The borough of Bangor was incorporated on May 5, 1875, the Lobb tract and part of the Jones tract being included within its limits. On January 17, 1877, the borough authorities adopted Pennsylvania Avenue, as laid out by Lobb, and established a grade therefor. This street had not actually been opened for travel; and, in the summer of 1878, W. W. Hambright was employed to fill up the low places sufficiently to make it passable. Hambright made a fill in the centre of the street sufficiently wide for a wagon-way, but did not bring the street up to the grade established in 1877. He finished his work about August 1, 1878. In 1879, the public road, the boundary between the original tracts of Lobb and the plaintiff, was vacated

by the borough, and the plaintiff took possession of the ground occupied by it.

On July 8, 1878, Lobb conveyed to the plaintiff the irregular piece of land lying between the public road and Pennsylvania Avenue; and, in 1882, the plaintiff bought from J. H. and Samuel Stocker a lot of ground fronting on the south side of Pennsylvania Avenue, one of several lots sold and conveyed by Lobb to the Stockers in 1874, and in 1883 he built a house on this lot.

In 1887, the borough employed Charles Shoup to grade Pennsylvania Avenue, in accordance with the resolution of 1877 establishing a grade therefor. Shoup completed this work in November, 1887. The street level was thereby raised to a height of from five to seven feet above the plaintiff's land, on the north side of the street, and from four to six feet above his lot on the south side thereof. The door sill of his house was left about fifteen inches below the surface of the street. The plaintiff, and other witnesses called by him, testified that his properties were depreciated in value by the raising of the street, and gave estimates of the extent of the depreciation. On cross-examination, the plaintiff stated that he had signed a petition to the borough council for the grading of Pennsylvania Avenue, but he did not understand that it asked for the raising of the street to the level at which it was afterwards placed; that he was unable to read the petition, and signed it after being told that it was a petition to "fix the road" and take a "little hill out of it."

The defendant made the following offer:

Defendant offers to prove by the records of the borough of Bangor, and its minutes and official map, that a system of grades and streets was made and adopted on the seventeenth day of January, 1877, which system of grades and streets included the part of Pennsylvania Avenue now in controversy; and, further, offers to prove that the part of Pennsylvania Avenue, just referred to, was laid out through the lands of John Lobb, and was dedicated by him to the borough of Bangor, and was subsequently accepted by the borough and acquiesced in and agreed to by the plaintiff, David J. Jones, and the adjoining property-holders, in lieu of the old road passing to the north of it, and that the old road was vacated by the borough,

and the land occupied by David J. Jones as part of his land;
that the street was so laid out with reference to the grades of
the same as fixed and understood by agreement of the parties
upon the map of the borough theretofore adopted; that David
J. Jones, the plaintiff, bought a lot on the south side of Penn-
sylvania Avenue, and also bought from John Lobb a strip of
land upon the north side of Pennsylvania Avenue, between
Fifth and Sixth streets, which gave him the only frontage upon
that portion of Pennsylvania Avenue in controversy here, the
alleged damages to which he now complains of, with the full
understanding and under an agreement with the vendor that
Pennsylvania Avenue was to be laid out and graded in con-
formity with the system of grades and map theretofore adopted
by the borough; that, before the grade so laid out could be
used, it was necessary, owing to the natural conformation of
the ground, that some work must be done to make it barely
passable; that work was done by Hambright in May, 1878,
under a contract with the borough to do only so much as was
absolutely necessary to make it passable, and that the work
so done was acquiesced in by the abutters upon the street, and
the finances of the borough of Bangor did not permit any fur-
ther work to be done upon that street at that time; that the
abutters upon the street, David J. Jones, the plaintiff, and also
Robert Keat and Thomas H. Miller, all built houses on the
south side of Pennsylvania Avenue, between Fifth and Sixth
streets, with reference to the grade as established by the bor-
ough in 1877, obtaining from the records of the borough and
from the map the lines of grade so established; and defendant
offers to prove, furthermore, by the surveyors of the borough and
by Birge Pearson, the present surveyor of the borough, that the
work done by Shoup was in exact and strict accordance with
the grade established by the borough in 1877, and that the
said surveyor supervised the work done by Shoup with refer-
ence to that grade, driving the stakes by which his work was
to be done, and surveying and examining the levels after the
work was completed; and, furthermore, that citizens of the
borough and residents abutting upon Pennsylvania Avenue
from time to time requested the borough verbally, and by writ-
ten petition, among them David J. Jones, the plaintiff, to put
Pennsylvania Avenue upon the grade conforming to the grades

established by the borough ; and furthermore, to show, by persons familiar with the ground, that the work done by Hambright was work upon the centre of the road for the most part, and that the road was not graded out upon its sides, so that it would appear to any ordinarily intelligent person, by an inspection of the road after Hambright had done his work upon it, that the road was not finished, but merely temporarily put in passable condition.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[1]

The foregoing offer was made at the suggestion of the court, to cover the defendant's whole case.   The defendant then made separate offers, presenting different phases of the case, among which were two, in substance as follows :

Defendant offers to prove that the plaintiff, with other owners of property, petitioned the borough council, on April 1, 1887, "to grade Pennsylvania Avenue from Fifth street to the borough line;" and that, in answer to that petition, said avenue was subsequently graded in accordance with the original scheme adopted in 1877 ; to be followed by evidence that the petitioners intended by that petition the original grade as ordained by the borough in 1877.

Objected to.

By the court : Objection sustained ; exception.[2]

Defendant offers to show a dedication of Pennsylvania Avenue on the part of John Lobb and the owner of the land on both sides of it ; to be followed by evidence showing the acceptance of the same by the borough in accordance with a grade that was agreed upon.

Objected to.

By the court: Objection sustained ; exception.[4]

Testimony for the defendant tended· to rebut the allegations of the plaintiff, as to depreciation in the value of this property by reason of the grading done by the defendant borough.

The testimony being closed, the court, SCHUYLER, P. J., charged the jury in part as follows :

[During the summer and fall of 1887, the borough changed the grade of this avenue between Fifth street and Seventh street, in front of the property of Mr. Jones, the plaintiff, and

Arguments.

he now seeks to recover damages for the injuries which he alleges that this property has sustained in consequence. The question for you to determine is whether or not he has sustained any damages and if so how much.][6] . . . . .

The question whether or not the plaintiff is entitled to a verdict at your hands is to be determined by the inquiry as to whether the plaintiff's property was injured by the change of grade. You will inquire in the first place, what was the value of the plaintiff's property immediately before the change of grade was made. It will be convenient for you to determine that question first. Having determined that question you will proceed, in the second place, to inquire what was the value of the plaintiff's property immediately after the change of grade. If you find that the plaintiff's property was worth just as much after the change of grade as before, or, if you find that it was worth more after the change of grade than it was before, then you will find a verdict in favor of the defendant, for in that event the plaintiff would not have sustained any damages. If, however, you find that the plaintiff's property was worth less immediately after the change of grade than it was immediately before the change, then you will ascertain how much less it was worth, and your verdict will be for that amount, together with interest from the time the change of grade was made. Now what is the fact? . . . . .

The plaintiff requests the court to charge :

1. The cause of action accrued at the time the actual physical change of grade was made on Pennsylvania Avenue.

Answer: Affirmed.[5]

2. Any physical change from the natural grade of the ground, or from a grade previously made, is within the meaning of the statute of May 24, 1878.

Answer: Affirmed.

—The jury returned a verdict for the plaintiff for $350.50. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2, 4. The refusal of defendant's offers.[1][2][4]

5. The affirmance of plaintiff's point.[5]

6. The part of the charge embraced in [ ][6]

*Mr. F. W. Edgar* (with him *Mr. A. C. La Barre*), for the appellant :

Arguments.

1. An abutter on a dedicated street, who derives title from the dedicator, is estopped from claiming damages resulting from an actual change of level, if the change brings the street to the grade line agreed upon by the dedicator and adopted by the municipality before the street was opened. When a street is laid out in the exercise of the power of eminent domain, the compensation for the land taken includes the damages for a change of grade effected at the time the street is laid out or opened: Pusey v. Allegheny City, 98 Pa. 522; Geissinger v. Hellertown Bor., 133 Pa. 525; Brady Street, 99 Pa. 591; Dillon on Mun. Corp., §§ 995 a, and 995 b. It follows that an unrestricted dedication of land for a public street is a waiver of damages for the original change of grade: North & W. Br. Ry. Co. v. Swank, 105 Pa. 555; Hoffeditz v. Railway Co., 129 Pa. 264; Updegrove v. Railroad Co., 132 Pa. 540. Moreover, we offered to show Lobb's actual consent to this grade line, before the street was opened. Such consent estopped both him and others deriving title from him: Pearl St., 111 Pa. 565; Brooklyn St., 118 Pa. 646; McCague's App., 22 W. N. 178.

2. The theory upon which the court below went was that Lobb's consent could not bind the plaintiff, because the actual grading was not done until after the plaintiff had acquired title, and therefore the cause of action did not arise until then. But the right of action for the taking of land for a street accrues only when the street is actually opened: Easton Bor. v. Rinek, 116 Pa. 1; Easton Bor. v. Walters, 18 W. N. 117; and yet the rule is undoubted that a dedication will bind the vendee of the dedicator, purchasing before the opening of the street. Again, our offer of facts from which the plaintiff's own consent to the grade could have been inferred by the jury, ought to have been received. Newville Road, 8 W. 172, holding that one who petitions for a public road is not precluded from recovering compensation or land taken, is not in point. The reason for that decision plainly is that the petitioner could not know when he signed the petition, how the viewers, in the exercise of their discretion, would locate the road between its terminal points. The petition for grading, signed by the plaintiff and acted on by the borough, is an estoppel: Bidwell v. Pittsburgh, 85 Pa. 412; Dewhurst

Arguments.

v. Allegheny City, 95 Pa. 437; McKnight v. Pittsburgh, 91 Pa. 273.   Moreover, it is only to changes of grade "without the consent" of abutting owners that the act of May 24, 1878, P. L. 129, applies.

3. One who acquires land abutting on a street, after the actual work of grading has begun according to a fixed plan, cannot recover damages for change of grade; these belong to him who was the owner at the time of its commencement: New Brighton Bor. v. Peirsol, 107 Pa. 280; Losch's App., 109 Pa. 72; Campbell v. Philadelphia, 108 Pa. 300.   This is the rule of law, irrespective of whether the predecessor in title gave his consent to the grade-line and the actual grading, or not. We offered to show a chain of facts connecting the establishment of the grade-line by the borough, prior to the opening of the street, with the grading done in 1887, explaining the delay in completing the grading commenced in 1878 by the condition of the borough finances, and proving that the changing of the grade was one continuous piece of work that had its inception prior to the plaintiff's acquisition of title.   In the circumstances of this case, no presumption of fact, still less of law, that the work of 1878 was a completed change, could arise.   The nature of the ground was such that it was a natural presumption that the borough would finish the grading in the manner in which it was in fact done.

*Mr. M. Kirkpatrick* and *Mr. W. S. Kirkpatrick,* for the appellee.

Counsel cited: (1) As to the right of action for a change in the grade of a street: § 8, article XVI., constitution of 1874; act of May 24, 1878, P. L. 129; Reading City v. Althouse, 93 Pa. 400; Penna. R. Co. v. Marchant, 119 Pa. 555; Lycoming Gas & W. Co. v. Moyer, 99 Pa. 619; New Brighton Bor. v. U. P. Church, 96 Pa. 339; Hendrick's App., 103 Pa. 361; Freemansburg Bor. v. Rodgers, 7 Cent. R. 831.   (2) As to when the right of action accrues: Freemansburg Bor. v. Rodgers, supra; Brown v. Lowell, 8 Metc. 177; Page v. Boston, 106 Mass. 84; North Chester Bor. v. Eckfeldt, 1 Mona. 733; Craft v. South Chester Bor., 3 Pa. S. C. Dig. 122; Folkenson v. Easton Bor., 116 Pa. 523.   (3) As to the effect of a dedication of a street: New Brighton Bor. v. U. P. Church, 96 Pa.

339; Angell on Highways, § 135. (4) As to the effect upon a landowner's claim for damages of his petitioning for the grading: Newville Road, 8 W. 172. (5) As to the right to recover successively for successive changes of grade: New Brighton Bor. v. Peirsol, 107 Pa. 280.

OPINION, MR. JUSTICE McCOLLUM:

In 1887, Pennsylvania Avenue, a public street in the borough of Bangor, was graded by direction and at the cost of the municipality "from North Fifth street to the borough line." David J. Jones was then the owner of eight lots abutting on the street, one being on the south and seven on the north side of it. In front of these lots, the street was raised by the grading from four to seven feet, and Jones, complaining that his property was injured by it, brought this action.

In 1874, John Lobb owned a tract of land, containing eighteen acres, which now includes the portion of Pennsylvania Avenue in controversy, and in that year he laid it out into building lots, with streets and alleys, a plot of which he recorded. On the first of April, 1874, he conveyed six of these lots lying on the south side of the street, marked on the plot as "Pennsylvania Avenue," to Jacob and Samuel Stocker, and in 1878 he sold to Jones the small triangular strip of land between the north side of the street and the old road. This purchase by Jones, coupled with the vacation of the old road, changed the front of his property from the north side of the latter to the street as laid out and dedicated by Lobb in the recorded plot. Jones acquired title to his lot on the south side of the street by a conveyance from the Stockers in 1882, and it was one of the six lots which they bought of Lobb in 1874. The borough of Bangor was incorporated in May, 1875, and two years thereafter it adopted a system of grades and streets which, it is alleged, included Pennsylvania Avenue. In the summer of 1878, this avenue was opened to public travel, and sufficient work was done upon it to render it barely passable; but no effort was made to grade it in conformity with any established plan. It remained in this condition nine years, when a petition, signed by Jones and others, was presented to the borough council, requesting that it be graded.

This recital comprehends all the facts essential to an intelli-

gent consideration of the questions raised in the case. It is
contended by the borough that as Lobb laid out the street,
and dedicated it to public use, he and his vendees are precluded
from claiming damages for an injury to their lots abutting
thereon, caused by a change of grade; that the physical change
of grade made in 1887 conformed to the grade established by
the borough ordinance ten years before, and that the right of
action for the damage caused by it, if there was any, belonged
to the parties who owned the lots when the ordinance was
adopted, and is barred by the statute of limitations; that the
work done in 1878 to open the street and make it " barely pass-
able" was the beginning, and that done in 1887 was the com-
pletion of the grade adopted by the borough in 1877, and a
right of action for the damages arising therefrom accrued when
the work was commenced, and cannot be split; and, finally,
that Jones is estopped from claiming damages by his under-
standing with Lobb when he purchased the triangular piece,
and by his signature to the petition for grading the street.

In considering these defences, it must be remembered that
the street was dedicated, and many lots abutting on it were sold
by Lobb a year before the borough was incorporated. The
dedication was independent of, and had no connection with the
grade subsequently established. It was too late, after record-
ing the plot and selling lots in conformity with it, to modify or
annex conditions to the dedication. Assuming that the act
of dedication included a waiver of any claim for damages for
the opening of the street, it by no means follows that the dam-
ages provided for by the new constitution and the act of May
24, 1878, are released by it. Injuries to abutting property,
caused by a change of grade, an alteration or enlargement of
the street, do not necessarily result from the opening of it to
public travel. It is true that in a proceeding to recover dama-
ges caused by the opening and grading of a street, the party
must submit his whole claim, embracing consequential as well
as direct injuries; but, " where the grading occurs as a separate
act of the public authorities, and so long after the opening of
the street that the assessment of the damages at the time of
the appropriation cannot include those resulting from the
grading, the latter may be ascertained by a second view:"
Pusey v. Allegheny City, 98 Pa. 522. We think it is clear

Opinion of the Court.

that a dedication in 1874 cannot operate as a release of damages caused by a physical change of grade in 1887, in accordance with a grade established by ordinance in 1877: New Brighton Bor. v. U. P. Church, 96 Pa. 331 ; New Brighton Bor. v. Piersol, 107 Pa. 280.   The right of action for damages caused by changing the grade of a street accrues when the work is done on the ground.   It is the physical, not the paper, change which confers it: Freemansburg Bor. v. Rodgers, 7 Cent. R. 828. In the present case, the right of action accrued in 1887, when the first and only work was done for the purpose of bringing Pennsylvania Avenue to the grade established by the borough ordinance.   This work was a separate and independent act of the corporate authorities, entirely apart and distinct in time and purpose from that done in opening the street in 1878.   It follows that the latter can have no influence on the right of action for damages caused by the former.

In the deed to Jones of the triangular piece of land, there was no provision in relation to the grading of the street, or the damages arising therefrom.   If he and his vendor knew that a grade was established by the borough in 1877, and it was understood by them that the street would eventually be made to conform to it, such knowledge and understanding would not affect the borough's liability, nor defeat the present claim. The consent which relieves a borough from its constitutional obligation to make just compensation to the owner for an injury to his property, means something more than non-resistance. It should be given to the municipality by the party interested, and it should embrace, in express terms or by necessary implication, a release of the right to damages.   We cannot assent to the proposition that a lotowner, who joins in a request to the borough authorities to grade a street, is estopped thereby from claiming compensation for an injury to his property by the grading.   The cases relied on by the appellant to support his claim are not in point.   The distinction between them and the case at bar is so plain that a discussion of it is unnecessary.

In the view we have taken of the case, there was no error committed in the rejection of the offers of evidence or in the instructions to the jury.

Judgment affirmed.